*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                          :
MARCIA L. MALCOLM,                        :
                                          :
                          Plaintiff,      :
                                          :        Civil Action No. 16-8646 (FLW)
        v.                                :
                                          :             **OPINION**
COMMISSIONER OF                           :
SOCIAL SECURITY,                          :
                                          :
                          Defendant.      :
—————————————————————                     :

**WOLFSON, United States District Judge**:

        Plaintiff Marcia L. Malcolm ("Plaintiff"), appeals from the final decision of Defendant the

Commissioner of Social Security (the "Commissioner" or "Defendant"), denying Plaintiff's claim

for Childhood Disability Insurance Benefits ("CDIB")[1] under §§ 202(d) and 223(d) of the Social

Security Act (the "Act").  After reviewing the Administrative Record, the Court finds that the

opinion of the Administrative Law Judge ("ALJ") was based on substantial evidence, and,

accordingly, affirms the Commissioner's decision.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        Plaintiff was born on January 20, 1953.  Administrative Record (hereinafter "A.R."), 31.

Plaintiff graduated from high school and is able to communicate in English.  A.R. 31.

————————————————
[1] Courts refer to CDIB alternatively as disabled adult childhood benefits ("DAC").
*Compare Harrold v. Astrue*, 323 F. App'x 114, 115 (3d Cir. 2009) (CDIB), *with Beasich v.
Comm'r of Soc. Sec.*, 66 F. App'x 419, 421 (3d Cir. 2003) (DAC).  For the purposes of this
Opinion, the Court will use CDIB and DAC interchangeably.

On May 23, 2012, Plaintiff applied for DAC, alleging that she was disabled prior to reaching the age of twenty-two, due to severe rheumatoid arthritis and encephalitis. A.R. 75, 177. Plaintiff's claim was denied initially and again upon reconsideration. A.R. 75-86. On September 11, 2014, a hearing (the "Hearing") was held in Plaintiff's case before Administrative Law Judge Daniel N. Shellhamer (the "ALJ"). A.R. 38-73. Plaintiff was represented by counsel at the Hearing, wherein both Plaintiff and vocational expert Marian R. Marracco (the "VE") testified. A.R. 38-73. The ALJ issued a decision on March 13, 2015, finding that Plaintiff was not disabled, as defined in § 223(d) of the Act, prior to January 19, 1975, the date that Plaintiff attained the age of twenty-two, and therefore, denied Plaintiff's claim for DAC benefits. A.R. 17-33. Plaintiff filed a timely Request for Review with the Appeals Council, which request was denied on September 19, 2016, rendering the ALJ's decision the final, reviewable decision of the Commissioner. A.R. 1-6. Plaintiff subsequently filed the instant appeal requesting review of the ALJ's March 13, 2015 decision.

A.    **Review of the Medical Evidence**

On February 29, 1960, Daniel C. Hackett, M.D., diagnosed Plaintiff with post mumps encephalitis and Still's Disease in her right knee, and referred Plaintiff to physical therapy, twice per week, for "exercises, swimming, activities of daily living, [and] gait training." A.R. 317, 338. From February 1960 until August 1972, Plaintiff attended outpatient physical therapy services at the Children's Specialized Hospital (the "Hospital") in Westfield, New Jersey. A.R. 261-339.

On April 28, 1960, Plaintiff's physical therapist, Victoria Preitner, R.P.T., reported that Plaintiff had attended physical therapy, pursuant to Dr. Hackett's referral, and had "shown some improvement," particularly in her coordination and endurance. A.R. 317. On September 1,

1960, Dr. Hackett recommended that Plaintiff continue with physical therapy throughout the winter, which he believed could stimulate growth in Plaintiff's left leg that could help offset her almost one inch differential in leg length. A.R. 321. On May 12, 1960, Dr. Hackett reported that Plaintiff had made progress through her physical therapy sessions, and recommended further physical therapy for Plaintiff. A.R. 311. On November 18, 1960, Ms. Preitner reported that Plaintiff had continued her physical therapy sessions, which consisted of swimming and various resistance exercises, and noted that inserts had been placed in Plaintiff's shoes to help offset her leg length differential. A.R. 316.

On October 9, 1960, Joseph J. Boylan, M.D., reported that Plaintiff had rheumatoid arthritis and mumps encephalitis. A.R. 311. On April 12, 1962, Ms. Preitner summarized Plaintiff's therapy for Dr. Boylan, stating that Dr. Hackett had diagnosed Plaintiff with post-mumps encephalitis and Still's Disease in her right knee. A.R. 301. Ms. Preitner issued a follow-up report on October 4, 1962, stating that Plaintiff had complained of occasional discomfort when walking, as well as, for the first time, stiffness in her fingers, but that her complaints subsided after she was placed on medication. A.R. 302. Ms. Preitner further reported that Plaintiff's strength and ability to squat, hop, and bike had improved, but that Plaintiff continued to tire easily on exertion. A.R. 302.

On June 30, 1971, the New Jersey Rehabilitation Commission (the "Rehabilitation Commission") sent a letter to the Hospital, stating that Plaintiff "has a disability which may be a handicap in finding employment," and requesting a "report consisting of a summary of [Plaintiff's] hospitalization, including pertinent operative, therapeutic, or laboratory findings." A.R. 264. The letter indicated that the report would assist the Rehabilitation Commission "in providing further services to the patient." A.R. 264.

On July 7, 1971, Margaret Symonds, M.B.B.S., on behalf of the Hospital, sent the Rehabilitation Commission a report in response to their June 30, 1971 letter. In the report, Ms. Symonds stated that Plaintiff had attended the Hospital on an "outpatient basis only" from February 1960 until August 1967, where Plaintiff received physical therapy for treatment of "the after effects of mumps encephalitis and arthritis of her right knee joint." A.R. 263. Ms. Symonds noted that, prior to August 1967, Plaintiff's physical therapy at the Hospital "was directed towards increasing strength of muscles of [the] trunk and extremities, particularly the quadriceps femoris, improving equilibrium reactions and increasing range of motion in the right knee." A.R. 263. Ms. Symonds reported that, as a result of Plaintiff's arthritis in her knee, "the right limb had an accelerated growth and she developed relative shortening of [the] lower (left) extremity, and . . . scoliosis." A.R. 263. Ms. Symonds further indicated that, since 1967, Plaintiff had attended the Hospital "for swimming pool exercises only." A.R. 263. The record reflects that Plaintiff's physical therapy at the Hospital continued through 1972, when she discontinued therapy in order to attend college. A.R. 265-284.

Significantly, as discussed at length in both the ALJ's decision and in this Court's opinion, *infra*, the record does not contain any medical evidence from 1972 to 2004. Plaintiff did provide medical evidence for the period from 2004 to 2011, when Plaintiff treated with Michele Berger, M.D., and Joyce Talavera, M.D., of the Summit Medical Group. A.R. 340-400, 423-82. Dr. Berger's treatment records reveal that Plaintiff had juvenile rheumatoid arthritis, chronic deformities, hypertension, and osteoporosis, and that, in 1976, Plaintiff had reconstructive surgery on her hands due to juvenile rheumatoid arthritis. A.R. 340. On June 30, 2005, Dr. Berger noted that Plaintiff had total joint replacement in her hands, and "[m]oderate to

severe joint involvement" in her hands and knees. A.R. 446. A bone density test on June 22, 2010, showed that Plaintiff was osteopenic. A.R. 392-94

More specifically, on December 20, 2004, Dr. Berger noted that Plaintiff had juvenile rheumatoid arthritis, but indicated that Plaintiff was "feel[ing] well." A.R. 458. On June 30, 2005, Dr. Berger indicated that Plaintiff had total joint replacement in her hands, and "[m]oderate to severe joint involvement" in her hands and knees. A.R. 446. Dr. Berger's May 3, 2007 musculoskeletal assessment noted that Plaintiff tested negative for joint pain and joint swelling, but positive for chronic joint deformities in her lower and upper extremities as a result of her juvenile rheumatoid arthritis. A.R. 341-42. Except as discussed in the following paragraph, subsequent follow-up reports on March 31, 2008, December 4, 2008, February 27, 2009, April 10, 2009, August 14, 2009, December 17, 2009, April 15, 2010, July 13, 2010, December 21, 2010, October 18, 2011, and June 21, 2011 reported no significant changes from the May 3, 2007 assessment. A.R. 344-383.

On July 13, 2010, Dr. Talavera reported that Plaintiff's arthritis was worse in the hot weather, and that Plaintiff was having trouble with her balance due to arthritis. A.R. 361. Dr. Talavera's December 21, 2010 report indicated that Plaintiff's arthritis was stable and in remission. A.R. 365. However, Dr. Talavera's October 18, 2011 report indicated that Plaintiff's arthritis was "flaring up." A.R. 368. And, on June 21, 2011, Dr. Talavera reported that Plaintiff was experiencing tightness in her left knee and Achilles tendon, but was otherwise feeling well. A.R. 382.

Additionally, from January 8, 2013 to August 6, 2013, Plaintiff treated with Vaidehi Sasidhar, M.D., of Monmouth Family Medicine in Freehold, New Jersey. A.R. 401-422. Dr. Sasidhar's medical reports indicate that Plaintiff had a past medical history consisting of juvenile

rheumatoid arthritis, hypertension, encephalitis, hyperlipidemia, and osteoporosis, and that Plaintiff had previously undergone hand surgery.  A.R. 401.  During the course of her treatment with Dr. Sasidhar, Plaintiff denied experiencing "muscle cramps, muscle pain, joint pain, joint redness, joint swelling, joint stiffness, back pain, and neck pain," as well as "poor balance, poor coordination, . . . numbness, tingling, tremors, [and] weakness."  A.R. 402-03, 408, 413.  Dr. Sasidhar noted that Plaintiff had a "normal gait and posture," that her joints were "without swelling, tenderness, defects or deformities," and reported "no back or joint deformity or scoliosis . . . of thoracic or lumbar spine, with normal [range of motion]."  A.R. 404, 409, 415.  Nonetheless, in addition to Plaintiff's rheumatoid arthritis, hypertension, and osteoporosis, Dr. Sasidhar indicated that Plaintiff had a body mass index "above the upper parameter," indicating obesity.  A.R. 404-05.

### B.    Review of Disability Determinations

Plaintiff applied for DAC benefits and disability insurance benefits under the Act on May 24, 2012 and May 21, 2012, respectively, alleging that she suffered from severe rheumatoid arthritis and encephalitis.  A.R. 174-178.  The Social Security Administration ("SSA") denied Plaintiff's applications on July 24, 2012, finding that Plaintiff was not disabled.  A.R. 75-79.  Specifically, the SSA found that although Plaintiff had inflammatory arthritis, a medically determinable impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, Plaintiff presented insufficient medical evidence to corroborate her claim.  A.R. 77-78.  On December 24, 2012, the SSA denied Plaintiff's claim on reconsideration, finding that Plaintiff had failed to meet her burden of establishing the severity of her disability prior to reaching the age of twenty-two.  A.R. 81-85.

### C.    Review of the Testimonial Record

On September 11, 2014, the ALJ held the Hearing in Plaintiff's case, during which Plaintiff and the VE testified. A.R. 38-74. Stan Kaslusky, the former Executive Director of the Westfield YMCA, and Dorothy Bachman, Plaintiff's aunt, also submitted statements on Plaintiff's behalf. A.R. 195-197.

### 1. *Plaintiff's Testimony*

Plaintiff testified that she was born on January 20, 1953, and was sixty-one years old at the time of the Hearing. A.R. 43. Plaintiff testified that she graduated from high school, attended two years of college, uninterrupted, and held an Associate's Degree as a library aide. A.R. 44, 50. Plaintiff further testified that she lived alone at the time of the Hearing, and that she did not have a driver's license. A.R. 43-44. In that regard, Plaintiff explained that her sister would drive her in the event that she needed to travel, and that, while she had previously used public transportation, she had been unable to do so for the last five to ten years. A.R. 44.

In terms of her alleged disability, Plaintiff testified that she was diagnosed with rheumatoid arthritis at the age of two, and that, at the age of ten, she had a "really bad arthritic flare-up," which caused complications in her hands and knees. A.R. 54, 58. With regard to the condition of her hands, Plaintiff testified that, following the "arthritic flare-up," she lost the ability to straighten out her fingers. A.R. 54. Plaintiff testified that she lacks "fine dexterity" in her fingers, and thus, has difficulty holding a pen and buttoning and unbuttoning small buttons. A.R. 54.

Plaintiff testified that she had corrective surgery on her hands in 1976, and that she was unable to have surgery before that time because the joints in her hand were too small. A.R. 54. Specifically, Plaintiff testified that her doctors inserted pins in her wrists to realign them, and removed the knuckle in her little finger, which rendered it useless. A.R. 55. Plaintiff also

testified that her doctors replaced the remaining knuckles in each of her fingers, which rendered those fingers "really useless unless I push them into position and then I can do something." A.R. 55-57.

Plaintiff testified that, overall, the surgery helped "for a while and it still does help a little but not that much," because her hands returned to their pre-surgery condition. A.R. 55. With regard to the functionality of her hands, Plaintiff testified that she has trouble lifting a cup and holding a milk carton, and needs to use two hands to do so. A.R. 57. To that end, Plaintiff testified that she is unable to lift a gallon of milk, weighing eight pounds, but is able to lift a quart of milk. A.R. 57. Plaintiff also testified that she had difficulty writing, particularly in high school, but that her writing improved over time, to the point where it was legible by the time she reached college. A.R. 48-9.

With regard to her work history, Plaintiff testified that she worked part-time as a library aide for a year at some point in the 1980s, working approximately five hours per day, three days per week. A.R. 44-46. As a library aide, Plaintiff worked at the front desk, filed paperwork, checked out books, and assisted with shelving books. A.R. 45. Nonetheless, Plaintiff testified that she could not perform certain tasks due to her disabilities, including climbing ladders and doing shelving that required her to carry a lot of books or to get down to the bottom shelf. A.R. 45. Plaintiff testified that, during her employment as a library aide, she had no difficulty walking. A.R. 47. Indeed, Plaintiff testified that, at that time, she could "walk all over the place," and could walk approximately a quarter mile, or one hundred yards, but would have to sit down every fifteen to twenty minutes to rest. A.R. 47.

Plaintiff also held a number of other part-time jobs over the years. She testified that she obtained her first job, at a company called FH Trapper, through an agency that specializes in

finding jobs for disabled persons.  A.R. 48.  At FH Trapper, Plaintiff worked at a desk processing

trucking bills of lading using an "adding machine."  A.R. 48-49.  Plaintiff testified that her

position required her to add up stacks of bills, but did not require her to process accounts

receivable or accounts payable.  A.R. 70.  Plaintiff testified that she was terminated after a year

at FH Trapper, because she was unable to work fast enough to meet the required quota.  A.R. 49.

Plaintiff's longest held position was a part-time job at the YMCA, where she was

employed on an "on-call" basis, typically working two to three days a week, for approximately

five-hour shifts.  A.R. 50-53.  Plaintiff obtained her position at the YMCA through her father,

who was an acquaintance of one of the YMCA's directors.  A.R. 53.  At the YMCA, Plaintiff

worked primarily at a desk, where her duties consisted primarily of copying documents for the

directors and assisting with billing and filing.  A.R. 50-51.  Plaintiff testified that she was

terminated at the YMCA after it came under the management of a new director, who gradually

phased her out of the position.  A.R. 53.  Significantly, Plaintiff also testified that, after

graduating college, she "probably" would have been able to work full-time, for forty hours per

week, in a position similar to the part-time positions she held doing paperwork at FH Trapper

and as a library aide, had someone been willing to hire her in such a position on a full-time basis.

A.R. 65.

At the Hearing, the ALJ, Plaintiff, and Plaintiff's counsel also engaged in a long colloquy

regarding the medical evidence presented by Plaintiff.  *See* A.R. 59-68.  Specifically, the ALJ

explained that, in order for him to find that Plaintiff was eligible for DAC benefits, Plaintiff

would have to establish that she was disabled prior to attaining the age of twenty-two, and that

her disability was "continuous and uninterrupted up to within one year of the time [Plaintiff]

filed [her] application . . . in 2012."  A.R. 59.  The ALJ noted that although Plaintiff had

provided medical evidence from 1960 to 1972, and from 2004 to the time of the Hearing, Plaintiff failed to provide any medical evidence regarding her treatment history from 1972 to 2004 (the "Gap Period"). A.R. 59-60. As a result, the ALJ asked a series of questions to Plaintiff and her counsel regarding Plaintiff's treatment history during the Gap Period. A.R. 59-64.

In response to the ALJ's prompting, Plaintiff testified that she treated with two primary physicians, or family doctors – Drs. Furman and Berger – during the Gap Period, but that she only saw them for minor illnesses, and not for her arthritis. A.R. 59-60. Plaintiff further testified that she did not see any arthritis doctors or specialists during the Gap Period, and that, following her surgery in 1976, "there was no more that they did for the arthritis." A.R. 59-62, 64. Plaintiff explained that her primary physicians during the Gap Period had "long retired," making it difficult to obtain treatment records covering that time. A.R. 61-62. When asked by the ALJ why she waited so long to file her claim for DAC benefits, Plaintiff explained that prior to her application, she was "living at home and [her] father was taking care of everything." A.R. 62. In regards to the Gap Period, the ALJ ultimately decided to hold the record open for thirty days to permit Plaintiff's counsel to submit any medical evidence that she could gather regarding the Gap Period. A.R. 66-68.

### 2. *Testimony of the Vocational Expert*

Marian R. Marracco testified as a vocational expert in this matter. A.R. 68-72. The VE classified Plaintiff's prior part-time jobs – as library aide and in desk positions at FH Trapper and the YMCA – under the occupational title of an "office helper," associated with Dictionary of Occupational Titles ("DOT") number 239.567-010. A.R. 68. The VE explained that the office helper position is defined as an unskilled, "light exertional" position, and that 83,250 of these

positions exist in the national economy.  A.R. 69.  Upon being prompted by the ALJ, the VE

explained that no office helper positions existed at the sedentary exertional level, because the

office helper position usually requires a person to get up and walk.  A.R. 69.

    The ALJ then asked the VE whether there existed in the national economy any unskilled

positions similar to that of an office helper, but at the sedentary exertional level.  A.R. 71.  The

VE responded that the job of an information clerk, corresponding to DOT 237.367.018, is an

unskilled, sedentary position, and that 937,800 of those positions exist in the national economy.

A.R. 71.  The ALJ concluded those positions "just [gave him] an idea about the job market," and

that he would hold the record open for thirty days to allow Plaintiff to supplement the medical

evidence in the record.  A.R. 71-72.

### 3.    Statement of Stanley A. Kaslusky

    On September 24, 2011, Stanley A. Kaslusky, the former Executive of the Westfield

YMCA, submitted a statement on Plaintiff's behalf.  A.R. 195-96.  Mr. Kaslusky stated that he

knew Plaintiff from 1984 to 2002 through his relationship with Plaintiff's father.  A.R. 195-96.

Mr. Kaslusky testified that he hired Plaintiff to work on an "on call," part-time basis at the

YMCA.  A.R. 195.  He explained that Plaintiff "reported to Kathy Dawson who would arrange

for her to place labels on envelopes, work the copy machine, fold brochures," and perform other

simple jobs at the office.  Mr. Kaslusky characterized Plaintiff's work as "being in a sheltered

environment," and testified that "given [Plaintiff's] abilities we could not hire her in a full time

capacity or without such supervision."  A.R. 196.

### 4.    Statement of Dorothy Bachman

    Plaintiff's aunt, Dorothy Bachman, also submitted an affidavit on Plaintiff's behalf.  A.R.

197.  Ms. Bachman testified that Plaintiff was a "normal, healthy baby until age two, when she

developed a severe case of rheumatoid arthritis," which left her with "gnarled hands and an uneven gait." A.R. 197.  Ms. Bachman testified that Plaintiff received physical and occupational therapy at the Hospital, where, as part of her medical treatment, Plaintiff received "massive doses of steroids to reduce the arthritic swelling and pain." A.R. 197.  Ms. Bachman explained that the steroid treatment left Plaintiff's immune system compromised, which led to Plaintiff developing encephalitis at age six. A.R. 197.  Ms. Bachman further testified that she has known Plaintiff for all of Plaintiff's life, and that Plaintiff's "current condition reflects a condition that has existed since she was two years old. A.R. 197.

With regards to Plaintiff's education and work experience, Ms. Bachman testified that Plaintiff attended the Westfield schools, but was mainstreamed due to a lack of special education programs. A.R. 197.  Nonetheless, Ms. Bachman clarified that Plaintiff had received certain special considerations, including extra time to take tests. A.R. 197.  Ms. Bachman further testified that Plaintiff had difficulty with anything involving manual dexterity, including holding a pen or pencil. A.R. 197.  Additionally, Ms. Bachman explained that although Plaintiff has held several small jobs working in a sheltered environment, including her job at the YMCA, Plaintiff's physical limitations have precluded her from ever holding a "significant job." A.R. 197.

### D.     The ALJ's Decision

On March 13, 2015, the ALJ issued a written decision regarding Plaintiff's application for DAC benefits. A.R. 20-33.  At the outset, the ALJ noted that, pursuant to § 202(d) of the Act and 20 C.F.R. § 404.350, in order to be entitled to DAC benefits, Plaintiff had to demonstrate that she had a disability prior to reaching the age of twenty-two, which, in Plaintiff's case, was January 19, 1975. A.R. 20.  In determining whether Plaintiff had established a disability prior to

that date, the ALJ applied the standard five-step sequential evaluation process set forth under 20 C.F.R. § 404.1520.  A.R. 20.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity prior to January 19, 1975.  A.R. 22.

At step two, the ALJ found that, prior to reaching twenty-two, Plaintiff had the following severe impairments:  juvenile rheumatoid arthritis, degenerative joint disease, and status post encephalitis.  A.R. 24.  The ALJ began his evaluation at step two by noting that the burden of proof in establishing disabilities rested with Plaintiff, who was required to furnish medical and other evidence in support of her medical impairments.  A.R. 24.  The ALJ further explained that an "impairment will be found not severe if medical evidence and other evidence in the record establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  A.R. 24 (citing 20 C.F.R. § 404.1521).

The ALJ found that although Plaintiff had met her burden of establishing that her juvenile rheumatoid arthritis, degenerative joint disease, and status post encephalitis were severe impairments, she failed to establish severe impairments due to osteoporosis and hypertension.  A.R. 24.  Specifically, the ALJ found that there was "minimal clinical evidence in the record to corroborate or support any finding of significant vocational impact related to these conditions" prior to the time Plaintiff reached twenty-two, and that Plaintiff's osteoporosis and hypertension, "considered singly and in combination, did not cause more than minimal limitation in [Plaintiff's] ability to perform basic work activities during the relevant period and are nonsevere

under the Social Security Act." A.R. 24.[2] The ALJ also noted that Plaintiff had obesity, and that, pursuant to Social Security Regulation 02-1p, he took into account Plaintiff's obesity in determining whether Plaintiff had a medically determinable impairment that was severe, whether those impairments met or equaled any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A (the "Adult Listings"), and in determining Plaintiff's residual functional capacity ("RFC"). A.R. 24.

At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in the Adult Listings, such that Plaintiff would qualify for disability benefits. A.R. 25. First, the ALJ found that Plaintiff had not adduced medical evidence to warrant a finding that her impairments met or medically equaled Listing 1.02, which is "the section under the category or musculoskeletal impairments that refers to major dysfunction of a joint due to any cause." Specifically, the ALJ found that:

> The evidence in the record does not demonstrate[] a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation or motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint, with an involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b as required by the listing.

A.R. 25.

Second, the ALJ found that the record failed to demonstrate that Plaintiff met the requirements of Listing 14.09, which relates to inflammatory arthritis. Specifically, the ALJ found:

> The claimant's condition does not meet the requirements of Listing 14.09, inflammatory arthritis, because the record fails to demonstrate that the claimant had persistent

---

[2] Although the ALJ found that Plaintiff's osteoporosis and hypertension were nonsevere under the Act, he noted that he took into account all of Plaintiff's impairments, both severe and nonsevere, in determining Plaintiff's residual functional capacity.

deformity or inflammation in one or more peripheral weight-bearing joints resulting in the inability to ambulate effectively; or inflammation or deformity in one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. The claimant does not have ankylosing spondylitis or other spondyloarthropathies. Finally, the claimant has not repeated manifestation of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) in conjunction with marked limitations in activities of daily living, social functioning, or concentration, persistence or pace.

A.R. 25.

In making his step three determinations, the ALJ noted that no treating or examining physician had "mentioned findings equivalent in severity to the criteria of any Listed impairment." A.R. 25. The ALJ also noted that, in finding that Plaintiff failed to demonstrate that her impairments met or medically equaled the severity of one of the listed impairments, he considered the medical evidence in the record, a detailed description of which was cited throughout his decision, including, as explained below, in his RFC determination. A.R. 25. Finally, the ALJ considered the opinions of the state agency consultants in Plaintiff's case, who had evaluated Plaintiff's condition at both the initial and reconsideration levels of the administrative review process, and reached the same conclusion that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments. A.R. 25.

Because the ALJ found that Plaintiff had no past relevant work prior to reaching the age of twenty-two, his step four analysis was limited to determining Plaintiff's residual functional capacity. To that end, the ALJ found that, prior to age twenty-two, Plaintiff had the RFC to perform:

[A] full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) except she was limited to unskilled work, including the ability to understand, remember and carry out simple instructions; the ability to use judgment to make work-related decisions; the ability to respond appropriately to supervisors, coworkers and work situations; and the ability to deal with changes in a routine work setting.

A.R. 25-26.  In reaching this RFC determination, the ALJ considered:  (i) relevant objective medical evidence and other evidence; (ii) Plaintiff's subjective complaints regarding the severity of her symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the evidence in the record, as required under 20 C.F.R. § 404.1529 and Social Security Regulations 96-4p and 96-7p; and (iii)  opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and Social Security Regulations 96-2p, 96-5p, 96-6p, and 06-3p.  A.R. 26.  For the sake of completeness, the Court will recount the ALJ's RFC analysis.

To begin, in evaluating Plaintiff's subjective complaints regarding the severity of her symptoms, the ALJ observed that he was required to engage in a two-pronged analysis:  first, the ALJ had to determine whether there was a medically determinable physical or mental impairment (*i.e.*, one that could be demonstrated by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce Plaintiff's pain or symptoms; and, second, if prong one was satisfied, the ALJ had to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning.  A.R. 26.  The ALJ noted that in conducting the second part of that analysis, he was required to make credibility findings whenever statements regarding the intensity, persistence, or functionally limiting effects of pain or other symptoms were not supported by objective medical evidence.  A.R. 26.[3]

At prong one, the ALJ noted that Plaintiff had asserted numerous subjective complaints and functional limitations related to her impairments in the course of the disability claim process. A.R. 26-27.  With regard to her physical impairments, the ALJ observed that Plaintiff had

---

[3] The ALJ also prefaced his RFC analysis by noting that, in accordance with Social Security Regulation 02-1p, he took into account the potential adverse impact Plaintiff's obesity had on her coexisting impairments in rendering his RFC analysis.  A.R. 26.

asserted that: she was diagnosed with juvenile arthritis at age two; that she had an arthritic flare-up at age ten; that she had corrective surgery on her hands in 1976, which surgery did not remediate the problems in her fingers, but alleviated the pain in her wrists; that she had the knuckle in her little finger removed, rendering that finger useless; that she needs help opening and lifting objects due to weak hands, including needing two hands to lift a half gallon of milk, and being unable to lift a gallon of milk; that her wrists are fused, with pins inserted in both sides to keep them straight; that her condition is no longer painful; and that she has problems with balance and going down stairs. A.R. 26-27.

With regard to Plaintiff's functional limitations, the ALJ noted that Plaintiff had testified that, both now and prior to age twenty-two: she could lift five to ten pounds; was able to stand for approximately one half hour; could walk for approximately a quarter of a mile to one hundred yards, but would need to sit down every fifteen or twenty minutes; had difficulty writing, which improved over time; had difficulty with small buttons due to a lack of fine dexterity in her fingers; and that she believed she could perform her prior part-time work on a full-time basis. A.R. 27. The ALJ's decision also reflects Plaintiff's testimony that she lives alone, does not drive herself, and, for the last five to ten years, has been unable to use public transportation. A.R. 27.

After setting forth Plaintiff's subjective complaints, the ALJ analyzed the medical evidence in the record; namely, Plaintiff's medical records from the Hospital, the June 30, 1971 letter from the Rehabilitation Commission, and Plaintiff's treatment records from 2004 to 2011. A.R. 27-28. With respect to the letter from the Rehabilitation Commission, the ALJ observed that although the letter stated that Plaintiff had a disability which may be a handicap in finding employment, the letter failed to explain the disability or document functional limitations, and

there were no further records in evidence from the Rehabilitation Commission. A.R. 27. The ALJ also found that it was significant that Plaintiff failed to produce any medical records from August 9, 1972 until March 26, 2004, reasoning that "[s]uch a gap in treatment services represents a serious impediment when considering [Plaintiff's] burden of proof that she was disabled prior to age twenty-two." A.R. 28

With respect to Plaintiff's treatment records after 2004, the ALJ noted that the medical records documented Plaintiff's juvenile rheumatoid arthritis, degenerative joint disease, and status post encephalitis, but failed to indicate any other severe impairments prior to age twenty-two. A.R. 28. The ALJ also cited Plaintiff's treatment records with Dr. Berger, which indicated that Plaintiff had only minor joint problems and tested negative for joint pain or swelling, but tested positive for chronic joint deformities. A.R. 28. The ALJ did note that Dr. Berger's records documented Plaintiff as having severe to moderate or multiple joint involvement of the hands and knees, and included a statement from Plaintiff that she has muscle problems and gets tired easily, but that she had been doing some exercise or physical activity. A.R. 28. However, the ALJ explained that Dr. Berger treated Plaintiff "conservatively with prescribed medication and requested a follow-up in four months, which is not indicative of an impairment necessitating frequent monitoring." A.R. 28. Nonetheless, the ALJ found that Plaintiff had met her burden at prong one of demonstrating that her severe impairments, as defined in the ALJ's step two determination, could reasonably be expected to cause the symptoms alleged. A.R. 29.

However, at prong two, the ALJ found that Plaintiff's complaints regarding the severity of her impairments were not supported by objective medical evidence, and thus, that he was required to make credibility findings as to Plaintiff's statements. A.R. 29-30 ("After carefully considering the criteria as outlined in Social Security [Regulation] 96-7p, the [ALJ] finds that

[Plaintiff's] reported restrictions are not consistent with the preponderance of medical evidence, as well as [Plaintiff's] testimony at the hearing.").  To that end, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible."  A.R. 30.  In so finding, the ALJ noted that the record contained several inconsistencies that adversely affected Plaintiff's credibility.  A.R. 29-30.  First, the ALJ noted that Plaintiff's demonstrated work history in the 1980s, after Plaintiff had reached the age of twenty-two, considered in light of her testimony that she could have performed her prior part-time jobs on a full-time basis, undermined her assertions of disability prior to attaining age twenty-two.  A.R. 29.  Second, the ALJ found that, because Plaintiff was required to show continuous disability from January 1975 – when she turned twenty-two – in order to recover DAC benefits, Plaintiff's failure to produce treatments records from 1972 to 2004 diminished her credibility.  A.R. 29.  Finally, the ALJ noted that Plaintiff had submitted a previous application for DAC benefits in 1994, which application was denied for insufficient evidence.  A.R. 30.  The ALJ noted that, although the medical evidence used to deny that claim was no longer available, the prior application was presumptively correct absent evidence to the contrary, and, when coupled with the gap in medical evidence, adversely affected Plaintiff's assertion of disability since age twenty-two.  A.R. 30.

With regard to the opinion evidence in the record, the ALJ gave little weight to the state agency consultant's findings that there was insufficient medical evidence to evaluate Plaintiff's claim for benefits, opting instead to give Plaintiff "the benefit of the doubt that her childhood rheumatoid arthritis was ongoing and a severe impairment prior to her attainment of age twenty-two."  A.R. 30.  The ALJ also noted that while he took Ms. Bachman's lay opinion evidence into consideration, in accordance with Social Security Regulation 06-03p, he accorded that opinion

little weight, finding that, like Plaintiff's subjective complaints, Ms. Bachman's opinion was not entirely credible in light of the medical evidence. A.R. 30-31. In conclusion, the ALJ stated that, weighing all the relevant factors, . . . [Plaintiff's] subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision." A.R. 31.

Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy. A.R. 31-32. In reaching this determination, the ALJ considered both the testimony of the VE and Plaintiff's age, education, work experience, and RFC in connection with the Medical-Vocational Guidelines (the "Grids" or "Guidelines"), 20 C.F.R. Pt. 404, Subpt. P, App. 2. A.R. 31. Specifically, the ALJ cited the VE's testimony that the job of an information clerk, associated with DOT 237.367-018, involved similar work to Plaintiff's prior office helper jobs, but at the unskilled, sedentary exertional level. A.R. 32. The ALJ also noted the VE's testimony that 973,800 information clerk jobs existed in the national economy, and found that the VE's testimony was consistent with the information contained in the DOT. A.R. 32.

Additionally, the ALJ explained that Rule 2.01 of the Medical-Vocational Guidelines applied to individuals who are able to perform sedentary work:

> The Table takes administrative notice of about 200 separate sedentary, unskilled occupational categories. Each occupational category represents numerous individual job titles in the national economy, with each job title itself encompassing a significant number of jobs. About 85% of these jobs are in the machine trades and bench work occupational categories. It is expected that such jobs can be performed after a short demonstration or within 30 days. Vocational adjustment is expected where age and basic education provide sufficient mobility to adapt to the major segment of unskilled, sedentary work. Generally, mobility to adapt exists for persons below age 50 and those who have education at a high school level. Conversely, restriction to the sedentary range of work for most individuals who are under age 50 and/or who have a high school education does not prohibit the ability to perform substantial gainful activity. The

Administrative Law Judge finds that under Rule 201.00 there were a sufficient number of jobs that [Plaintiff] could have performed prior to her attainment of age 22.

A.R. 32. Under the Grids, the ALJ found that "prior to attaining age 22, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and thus, that a "finding of 'not disabled' is . . . appropriate under the framework of the above cited rule." A.R. 32.

Accordingly, the ALJ concluded that, prior to January 19, 1975, the date Plaintiff attained age twenty-two, Plaintiff was not disabled, as defined in § 223(d) of the Act, and thus, denied Plaintiff's application for DAC benefits. A.R. 33.

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427

(3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

Additionally, pursuant to 20 C.F.R. § 404.350, a claimant who is at least eighteen years old, had a disability prior to attaining the age of twenty-two, and meets several other conditions may be entitled to DAC benefits. Specifically, § 404.350 provides:

> (a) General. You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if—
>
> > (1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;
> >
> > (2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;

(3) You apply;

(4) You are unmarried; and

(5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

(b) Entitlement preclusion for certain disabled children. If you are a disabled child as referred to in paragraph (a)(5) of this section, and your disability was based on a finding that drug addiction or alcoholism was a contributing factor material to the determination of disability (as described in § 404.1535) and your benefits ended after your receipt of 36 months of benefits, you will not be entitled to benefits based on disability for any month following such 36 months regardless of the number of entitlement periods you have had if, in such following months, drug addiction or alcoholism is a contributing factor material to the later determination of disability (as described in § 404.1535).

20 C.F.R. § 404.350.   The regulations governing DAC benefits incorporate the same definition of

"disability" found in the regulations pertaining to adult disability insurance benefits.  20 C.F.R. §

404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months.").  However, in addition to establishing that disability before attaining the age of

twenty-two, a claimant seeking DAC benefits must also demonstrate that "this disability continued

without interruption through the date of his application."  *Beasich*, 66 F. App'x at 421.

The Act establishes a five-step sequential process for evaluation by the ALJ to determine

whether an adult claimant is disabled.[4]  *See* 20 C.F.R. § 404.1520.  First, the ALJ determines

---

[4] As discussed, *infra*, the five-step sequential process applies whenever the claimant is over eighteen at the time of his or her application, regardless of whether the application is for disability insurance benefits or for DAC.  *See* 20 C.F.R. § 404.1520(a)(1)-(2) (stating that the five-step sequential process set forth in 20 C.F.R. § 404.1505 applies if you file an application for a period of disability or disability insurance benefits (or both) *or for child's insurance benefits based on disability*.") (emphasis added); *see also* 20 C.F.R. § 404.1505(a) ("We will use this definition of disability if you are applying for . . .  child's insurance benefits based on disability before age 22 . . . .").

whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in the Adult Listings, 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those in the Adult Listings, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Adult Listings, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined not to be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428.

Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

## III.    PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises four arguments on appeal as to why the ALJ's disability determinations were unsupported by substantial credible evidence.[5]  First, Plaintiff argues that the ALJ committed reversible error at step three by analyzing Plaintiff's claim under the five-step sequential process set forth in 20 C.F.R. § 404.1520, and by analyzing whether Plaintiff's impairments met or equaled the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A (the "Adult Listings"), rather

---

[5] The Court notes that in her brief appealing the ALJ's decision, Plaintiff places these four arguments under the following two headings:  (i) "The Commissioner Improperly Evaluated the Medical Evidence"; and (ii) "The Residual Functional Capacity Is Merely Conclusory And Is Not Supported By The Medical Record."  Plaintiff's Memorandum of Law ("Pl.'s Br."), at 9, 20.

than the impairments listed under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part B (the "Childhood Listings"). Second, Plaintiff argues that the ALJ's credibility findings as to the subjective complaints of Plaintiff and the lay opinion of Plaintiff's aunt, Dorothy Bachman, were improper. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. Finally, Plaintiff argues that the ALJ erred at step five by finding that, given Plaintiff's RFC, Plaintiff could perform work existing in the national economy. The Court addresses each argument in turn.

### A. The ALJ Applied the Proper Legal Standard

Plaintiff maintains that the ALJ committed reversible error by applying the legal standards governing adult disability benefits to Plaintiff's claim for DAC benefits. In that regard, Plaintiff argues that because Plaintiff is seeking DAC benefits, the ALJ erred in analyzing Plaintiff's claims under the five-step sequential process set forth in 20 C.F.R. §§ 404.1520 and 416.920, as opposed to the three-step sequential process set forth in 20 C.F.R. § 416.924. Similarly, Plaintiff argues that the ALJ erred at step three by analyzing whether the severe impairments that the ALJ found at step two – juvenile rheumatoid arthritis, degenerative joint diseases, and status post encephalitis – met or medically equaled the severity of one of the listed impairments in the Adult Listings, rather than the Childhood Listings.

Plaintiff's arguments are contradicted both by the statutory regulations governing DAC benefits and the law of the Third Circuit. First, the Court finds that the ALJ properly applied the five-step sequential process to Plaintiff's claim for DAC benefits, because the five-step process applies whenever a claimant is over eighteen at the time of his or her application, regardless of whether the application is for disability insurance benefits or for DAC. *See Harrold*, 323 F. App'x at 116 (affirming the ALJ's application of the five-step sequential process to the nineteen-year-old claimant's claim for CDIB); *see also Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012)

(finding that the five-step sequential process in 20 C.F.R. § 404.1520 applies to claims for DAC benefits under 20 C.F.R. § 405.350); *Bailey v. Colvin*, 224 F. Supp. 3d 1249, 1253 (N.D. Ala. 2016) ("The Commissioner evaluates a child's claim for DAC under the same standards generally applicable to adults applying on their own wage records by employing the five-step evaluation process . . . ."). Indeed, 20 C.F.R. § 404.1520(a) clearly states that the rules therein, including the five-step sequential process "apply to you if you file an application for . . . *child insurance benefits based on a disability.*" 20 C.F.R. § 404.1520(a)(1)-(2) (emphasis added); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth the five-step sequential process in the context of CDIB claims). Section 404.1520(a) also cross-references the definition of disability set forth in 20 C.F.R. § 404.1505(a), which applies "if you are applying for . . . *child's insurance benefits based on disability before age 22 . . .*." 20 C.F.R. § 404.1505(a) (emphasis added). Moreover the Court notes that the regulation cited by Plaintiff in support of her argument regarding the proper sequential analysis for analyzing her claim for DAC benefits, 20 C.F.R. § 416.924, states that "[f]or the period starting with the day [an applicant] attain[s] age 18, [the adjudicator] will use the disability rules we use for adults who file new claims, in § 416.920." 20 C.F.R. § 416.924. In the instant case, Plaintiff was over eighteen when she filed her application for DAC benefits, and thus, the plain language of § 416.924 directs the adjudicator to apply the adult disability rules, including the five-step sequential process. Accordingly, the Court finds that the five-step sequential process governs this case.

Second, Plaintiff's argument that the ALJ should have evaluated Plaintiff's impairments under the Childhood Listings, rather than the Adult Listings, is without merit. The regulations state that: [the Childhood Listings] contains criteria that apply only to individuals who are under age 18; [the adjudicator will] *never* use the [Childhood Listings] to evaluate individuals who are

age 18 or older." 20 C.F.R. §§ 404.1525 and 416.925 (emphasis added). At the time of Plaintiff's

application, Plaintiff was over the age of eighteen. Accordingly, the ALJ correctly analyzed

whether Plaintiff's severe impairments met or equaled the severity of one of the listed impairments

in the Adult Listings. *See Harrold*, 323 F. App'x at 116 (holding that the ALJ properly analyzed

the nineteen-year-old claimant's impairments under the Adult Listings, despite the fact that the

claimant sought CDIB benefits).[6]

---

[6] The Court notes that although the Plaintiff's brief includes a header in the argument section that
states, "The Commissioner's Determination that the Plaintiff has not Established that her
Impairments either Singularly or in Combination . . . [are] of Such Severity to Preclude her from
Engaging in Substantial Gainful Activity . . . is not Supported by Substantial Evidence," which
would appear to indicate a step three challenge, Plaintiff exclusively presents two arguments in
that section of her brief: (1) that the ALJ improperly evaluated Plaintiff's impairments under the
Adult Listings, rather than the Childhood Listings; and (2) that the ALJ improperly weighed the
evidence, by discrediting Plaintiff's subjective complaints and Ms. Bachman's testimony. Pl.'s
Br. at 9-20. In other words, Plaintiff has not argued that the ALJ erred in determining that the
severe impairments identified at step two – juvenile rheumatoid arthritis, degenerative joint
disease, and status post encephalitis – either individually or in combination did not meet or equal
the Adult Listings. Moreover, although Plaintiff cites to the Adult Listings in her Reply Brief,
*see* Plaintiff's Reply to Defendant's Memorandum of Law ("Pl.'s Reply"), at 2-4, she again fails
to set forth any reason as to why the ALJ's finding that Plaintiff's impairments did not meet or
equal the listings was in error. For example, Plaintiff does not argue that the ALJ failed to
consider any specific evidence in rendering his step three finding, failed to consider a specific
applicable listing, or otherwise explain with any degree of specificity why the ALJ's findings
that Plaintiff's impairments did not meet the Adult Listings was erroneous. And, even assuming
that the Court could construe Plaintiff arguments as a challenge to the ALJ's determinations that
Plaintiff's severe impairments did not meet or equal the listings in Sections 1.02 (major
dysfunction of a joint) and 14.09 (inflammatory arthritis), the Court finds that the ALJ's step
three findings were supported by substantial credible evidence. At step three, an ALJ must
consider each of the claimant's impairments and determine whether they meet or equal any of the
listings in 20 C.F.R. Pt. 404, Subpt. P, App. 1, that would give rise to a presumption of disability.
20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). An ALJ's conclusion that a claimant's
impairments do not meet or equal any listed impairment without "identifying the relevant listed
impairments, discussing the evidence, or explaining [the] reasoning" constitutes error requiring
remand. *See Burnett v. Comm'r of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000). However,
the Third Circuit has noted that an ALJ is not required to "use particular language or adhere to a
particular format in conducting [her] analysis," but that the decision "read as a whole" must be
capable of providing meaningful judicial review. *Jones*, 364 F.3d at 505. Here, with respect to
Listing 1.02, the ALJ found that:

### B. The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints and of Ms. Bachman's Affidavit

Plaintiff next argues that the ALJ erred in determining that Plaintiff's testimony as to the severity of her impairments was not "entirely credible," as well as in failing to consider the affidavit of Ms. Bachman. Credibility determinations are entitled to substantial deference on appeal. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness' demeanor."); *see also Izzo v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 280, 286 (3d Cir. 2006) (finding that "a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

---

The evidence in the record does not demonstrate[] a gross anatomical deformity and chronic joint pain and stiffness with signs of limitation or motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint, with an involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b as required by the listing.

A.R. 25. Additionally, with respect to Listing 14.09, the ALJ found that:

The claimant's condition does not meet the requirements of Listing 14.09, inflammatory arthritis, because the record fails to demonstrate that the claimant had persistent deformity or inflammation in one or more peripheral weight-bearing joints resulting in the inability to ambulate effectively; or inflammation or deformity in one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively. The claimant does not have ankylosing spondylitis or other spondyloarthropathies. Finally, the claimant has not repeated manifestation of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) in conjunction with marked limitations in activities of daily living, social functioning, or concentration, persistence or pace.

A.R. 25. While the ALJ does not mention the specific medical evidence on which he relied to make those step three findings, the ALJ was under no requirement to repeat the medical evidence that he outlined at length elsewhere in the decision, *see* A.R. 25-31, because, when "read as a whole," *Jones*, 364 F.3d at 505, the ALJ's step three determination was clearly supported by substantial evidence. Accordingly, the record shows that the ALJ's findings at step three, that Plaintiff's impairments did not, individually or in combination meet or equal Listings 1.02 or 14.09, is supported by substantial evidence.

A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). If the ALJ determines that a medical impairment could reasonably cause the alleged symptoms, he must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms" to determine the extent to which it affects the Plaintiff's ability to work. SSR 96–7p, 1996 SSR LEXIS 4 (S.S.A. July 2) at *2[7]; *Garibay v. Comm'r Of Soc. Sec.*, 336 Fed. Appx. 152, 157 (3d Cir. 2009). "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96–7p, at *2; *Garibay*, 336 Fed. Appx. at 157. In complying with this standard, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" SSR 96–7p,

---

[7] The Court notes that although the parties do not raise this issue, SSR 96–7p has been superseded by SSR 16–3p, which alters the standard by which ALJs are to evaluate a claimant's symptoms. Specifically, SSR 16–3p eliminates the word "credibility" from the sub-regulatory policy because the regulations do not use the term. SSR 16–3p, 2016 WL 1119029, at *1 (S.S.A.). However, SSR 16–3p became effective on March 16, 2016, after the ALJ rendered his March 13, 2015 decision in this case. Accordingly, the ALJ was bound by SSR 96–7p, not SSR 16–3p, and the Court will evaluate his decision under the former standard. *See Sponheimer v. Comm'r of Soc. Sec.*, No. 15–4180, 2016 WL 4743630, at *6 (D.N.J. Sept. 8, 2016) (finding that the ALJ was bound to evaluate Plaintiff's testimony regarding his symptoms under SSR 96–7p, because SSR 16–3p became effective after the ALJ's decision). Nonetheless, even if the ALJ was bound by SSR 16–3p, this Court's analysis of Plaintiff's subjective symptoms remains the same. SSR 16–3p states that an ALJ must evaluate a claimant's symptoms based on all evidence in the record, and not the claimant's character. SSR 16–3p. In this case, the ALJ discounted Plaintiff's testimony because portions of it conflicted with the evidence in the record, not because of Plaintiff's character. The ALJ's decision thus comports with the new standard promulgated in SSR 16–3p.

at *3.  Rather, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96–7p, at *3–4.

In evaluating a claimant's subjective complaints of pain, the ALJ considers factors such as the objective medical evidence, treatment course and effectiveness, daily activities, the type, dosage, effectiveness, and side effects of any medication that the claimant is taking, as well as the consistency of the claimant's statements with the evidence of record. 20 C.F.R. § 404.1529(c). Rejection of subjective testimony must be based on substantial evidence. *See VanHorn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, in accordance with SSR 96-7p, and based on objective medical evidence, the ALJ first found that Plaintiff had "underlying medically determinable impairments that could reasonably be expected to result in the symptoms as alleged." A.R. 29.  However, in considering Plaintiff's credibility, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible," because they were inconsistent with the evidence in the record. A.R. 30-31.  In so doing, the ALJ did not merely support his finding with a conclusory statement; rather, as required under SSR 96-7p, the ALJ provided specific reasons for his finding on credibility, including comparing Plaintiff's statements to the medical and other evidence in the record, noting the gap in Plaintiff's treatment records, and considering Plaintiff's work history.

Indeed, in finding that Plaintiff's subjective complaints regarding her symptoms were not entirely credible, the ALJ explained that there were several inconsistencies between Plaintiff's statements and the evidence in the record, which diminished Plaintiff's credibility.  For example,

the ALJ found that Plaintiff's "demonstrated ability to work after age twenty-two [was] contrary to her assertions of disability, which adversely affect[ed] her credibility." A.R. 29. In so finding, the ALJ reasoned that Plaintiff's earnings history and testimony concerning her employment after reaching age twenty-two belied her statement that her disabilities rendered her incapable of work. A.R. 29. The ALJ also cited to Plaintiff's testimony that she believed that she could do her prior part-time jobs on a full-time basis. A.R. 29.

Additionally, the ALJ found it significant in determining Plaintiff's credibility that, despite the fact that Plaintiff bore the burden of demonstrating continuous disability since age twenty-two, Plaintiff failed to produce in evidence any medical records from 1972 to 2004. A.R. 29. To that end, the ALJ found that "[s]uch a gap in treatment services represents a serious impediment when considering [Plaintiff's] burden of proof that she has been disabled since January 1975, which diminishes her credibility." A.R. 29. As the ALJ recognized, Plaintiff's statements regarding the intensity of her symptoms are undermined by the almost thirty-year gap in her medical records, diminishing the credibility of those complaints. Nonetheless, the Court notes that, even in light of these inconsistencies, the ALJ did not discount Plaintiff's subjective complaints altogether, but rather, simply found them "not entirely credible." A.R. 30. Accordingly, in discrediting Plaintiff's subjective complaints, the record indicates that the ALJ considered them in light of the evidence in the record, as required under the Social Security Regulations and the law of the Third Circuit, and thus, the Court finds that the ALJ's credibility determination is entitled to deference.[8]

_____

[8] The Court notes that, in her appeal, Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility based on the denial of Plaintiff's 1994 application for disability benefits. In his decision, the ALJ noted that Plaintiff had previously applied for CDIB in 1994, which application was denied for insufficient evidence. A.R. 30. The ALJ explained that although the medical evidence "used to deny this application is no longer available," absent evidence to the contrary, the denial of Plaintiff's claim based on insufficient evidence suggests that Plaintiff "failed to overcome her burden of proof that she was disabled prior to attainment of age" twenty-

Plaintiff's contention that the ALJ erred in failing to consider the affidavit of Ms. Bachman is also without merit. To that end, Plaintiff argues that the ALJ erred in "summarily dismiss[ing]" Ms. Bachman's opinion evidence under Social Security Regulation 06-03p as not being an acceptable medical source, when Ms. Bachman's opinion was being offered as lay evidence, in accordance with Social Security Regulation 83-20.[9] At the outset, the Court notes that, contrary to Plaintiff's assertions, the ALJ did not "summarily dismiss" Ms. Bachman's affidavit, but rather, simply accorded her statements "little weight," finding that they were not entirely credible "for the same findings mention[ed] in assessing [Plaintiff's] credibility." A.R. 31.

Additionally, the ALJ's weighing of Ms. Bachman's opinion evidence was not in error. Social Security Regulation 06-03p explains that, in addition to evidence from "acceptable medical sources," an adjudicator may consider evidence from "other sources," including "[s]pouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers." SSR 06-03p. In considering opinion evidence from other "'non-medical source[s]' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and

_____

two. A.R. 30. Contrary to Plaintiff's arguments, however, the ALJ did not make a specific credibility finding with respect to Plaintiff's subjective complaints based on the denial of Plaintiff's prior application. Rather, the ALJ merely stated that the "denial of the prior application, . . . *in conjunction with the gap in medical evidence* adversely affects [Plaintiff's] assertion of disability since prior to age twenty-two." A.R. 30 (emphasis added). Accordingly, the ALJ's reference to Plaintiff's prior application does not warrant overturning the ALJ's credibility determination.

[9] Plaintiff's citation to Social Security Regulation 83-20 for the proposition that "[i]nformation may be obtained from family members, friends, and former employers," SSR 83-20, is unavailing, in light of the fact that the section of Social Security Regulation 83-20 to which Plaintiff refers pertains solely to obtaining information for the purposes of determining the disability onset date. *See id.*

any other factors that tend to support or refute the evidence." SSR 06-03p. Nonetheless, the regulations state that "[n]ot every factor for weighing opinion evidence will apply in every case"; rather, "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." *Id.* The regulations further advise that adjudicators considering the opinions of non-medical sources "generally should explain the weight given to opinions from these 'other sources.'" *Id.* In the instant case, the ALJ complied with Social Security Regulation 06-03p in finding that Ms. Bachman's opinion evidence was entitled to little weight, in light of the inconsistencies between her opinion and the evidence in the record.[10]

### C.    The Determination of Plaintiff's Residual Functional Capacity

At step four, the ALJ determined that, prior to attaining age twenty-two,[11] Plaintiff had the RFC to perform: a "full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) except she

---

[10] Additionally, even assuming that the ALJ improperly weighed Ms. Bachman's opinion evidence, that failure does not provide a basis for remand or reversal, because it constitutes harmless error. To that end, while the regulations advise that an ALJ "may" draw inferences and conclusions about the credibility of a claimant's statements from statements of lay witnesses, including the claimant's family and friends, it is harmless error for an ALJ to omit statements that are merely duplicative of the Plaintiff's own claims. *See Crosby v. Barnhart*, 98 Fed. Appx. 923, 926 (3d Cir. 2004) ("Crosby contends that it was error for the ALJ to reject her fiancé's affidavit detailing her daily physical limitations. We need not dwell on this issue, because any error, if present, was harmless. The fiancé's description of Crosby's limitations mirrored her own description, which the ALJ considered."). Here, Ms. Bachman's affidavit was cumulative of Plaintiff's own statements, which the ALJ considered thoroughly. Accordingly, the ALJ's decision to accord the affidavit of Ms. Bachman little weight does not warrant remand or reversal. *See Rosa v. Colvin*, 956 F. Supp. 2d 617, 624–25 (E.D. Pa. 2013) ("Under the harmless error rule, an error only warrants remand if it prejudiced a party's 'substantial rights.' ") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

[11] While not referenced by either party, the Court notes that in rendering his RFC determination, the ALJ considered the evidence in the record, including Plaintiff's testimony and the medical evidence, corresponding to both the periods prior to Plaintiff's twenty second birthday, and after that time. Nonetheless, in light of the fact that DAC benefits require a claimant to establish that he or she had a disability before attaining age twenty-two, *and* that his or her disability continued

was limited to unskilled work, including the ability to understand, remember and carry out simple instructions; the ability to use judgment to make work-related decisions; the ability to respond appropriately to supervisors, coworkers and work situations; and the ability to deal with changes in a routine work setting." A.R. 25-26. Plaintiff challenges the ALJ's RFC finding, arguing that it was "merely conclusory and not supported by the medical evidence" in the record. Pl.'s Br. at 20.[12]

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. For example, in *Burnett*, the Third Circuit determined that remand was warranted, because the ALJ "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the

---

without interruption throughout the date of the benefits application, *see Beasich*, 66 F. App'x at 421, the Court finds that the ALJ's analysis was appropriate.

[12] The Court notes that while Plaintiff has not indicated whether she is challenging the mental or physical component of the ALJ's RFC assessment, the entirety of her argument on appeal is directed to the ALJ's physical RFC determination, and therefore, the Court need not reach the issue of whether the ALJ's mental RFC determination is supported by substantial evidence in the record.

courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

At the outset, the Court notes that in challenging the ALJ's RFC determination, Plaintiff simply maintains that the ALJ's RFC determination was conclusory and not supported by the medical evidence, without citing to any specific evidence, medical or otherwise, that the ALJ failed to consider in rendering his RFC determination. In its own review of the ALJ's RFC determination, the Court finds that the ALJ satisfied his obligation to consider all relevant evidence, and to provide reasoning for accepting or rejecting certain evidence. To that end, in assessing Plaintiff's RFC, the ALJ considered the objective medical and other evidence in the record, as well as Plaintiff's subjective complaints. As mandated by *Cotter*, the ALJ identified the medical and opinion evidence that supported his assessment that Plaintiff was capable of performing "sedentary work," limited to unskilled jobs. Specifically, the ALJ considered, *inter alia*, the following evidence: (1) Plaintiff's testimony concerning her physical impairments and functional limitations, including her testimony that, both now and prior to age twenty-two, she could lift five to ten pounds, was able to stand for approximately one half hour, could walk for approximately a quarter of a mile to one hundred yards, but would need to sit down every fifteen or twenty minutes, and that she believed she could work on a full-time basis; (2) Plaintiff's medical records from the Hospital; (3) the 1971 letter from the Rehabilitation Commission; (4) the gap in medical records between 1972 and 2004; (5) Plaintiff's medical records from 2004 to 2011, including Dr. Berger's records indicating that Plaintiff had only minor joint problems, tested negative for joint pain or swelling, had been doing some exercise or physical activity, and was on a relatively conservative medication regimen; (6) the state agency's findings; (7) Ms. Bachman's opinion evidence; and (8) Plaintiff's work history and educational background, including the fact

that Plaintiff had graduated from high school, held an Associate's Degree as a library aide, and worked several part-time jobs after the age of twenty-two, which Plaintiff testified that she believed she could have performed on a full-time basis. A.R. 26-31. Accordingly, the Court finds that the ALJ took into account all relevant evidence to substantiate his determination.

Moreover, the Court finds that the ALJ's determination that Plaintiff could perform sedentary work is supported by substantial evidence in the record. The regulations define sedentary work as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally[13] and other sedentary criteria are met.

20 C.F.R. §§ 404.1567 and 416.967. Here, in finding that Plaintiff could perform sedentary, unskilled work, the ALJ relied on Plaintiff's testimony's that she could lift five to ten pounds, stand for half an hour at a time, and walk for one hundred yards to a quarter mile. A.R. 26-27. The ALJ also found significant Plaintiff's testimony that she could perform her past part-time work on a full-time basis, which the VE testified was at the light work level, a higher exertional level than sedentary work. A.R. 27. Additionally, the ALJ noted that Plaintiff's medical records showed that Plaintiff tested negative for joint pain and dwelling, and that, on June 24, 2005, Plaintiff reported that she "only had minor joint problems," and that she had been "doing

---

[13] Under Social Security Regulation 83-10:
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

some exercise or physical activity." A.R. 28. And, this Court has already discussed, the ALJ engaged in a thorough analysis of Plaintiff's subjective complaints regarding the severity of her symptoms, comparing Plaintiff's statements to the evidence in the record, noting the inconsistencies therein, and explaining his reasoning for finding Plaintiff's statements not entirely credible. A.R. 29-31. Under these circumstances, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

Finally, Plaintiff's argument that the ALJ committed reversible error by failing to undertake a function-by-function analysis of Plaintiff's RFC, as required under Social Security Regulation 96-8p, is without merit. Social Security Regulation 96–8p states that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96–8p. The functions that must be addressed include the physical functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and each function "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours,') even if the final RFC assessment will combine activities." *Id.* Only after the function-by-function analysis "may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*

Contrary to Plaintiff's assertions however, the record in this case indicates that the ALJ specifically questioned Plaintiff regarding the physical functions and exertional capacity of her prior part-time work, and implemented Plaintiff's testimony into his RFC determination. To that end, the ALJ elicited testimony from Plaintiff concerning specific activities related to Plaintiff's prior employment, including her ability to file paperwork, sit at a desk, check out books, climb ladders, and operate an "adding machine." A.R. 23. Additionally, the ALJ questioned Plaintiff as to her ability to walk, lift, carry, and stand, and implemented Plaintiff's answers into his

determination that Plaintiff could perform work at the sedentary level. A.R. 26-27. These findings demonstrate that the ALJ undertook an individualized review of all relevant evidence, and engaged in the requisite function-by-function assessment of Plaintiff's exertional capacity.[14] Accordingly, the Court rejects Plaintiff's argument that the ALJ failed to conduct a function-by-function assessment of Plaintiff's RFC.

In sum, the Court finds no reason to disturb the ALJ's RFC determination, because the ALJ considered all relevant evidence in the record, provided a rationale for discrediting Plaintiff's subjective complaints regarding the severity of her impairments, rendered RFC findings that are supported by substantial evidence, and conducted a function-by-function assessment of Plaintiff's RFC.

**D.      The ALJ's Step Five Findings**

Finally, Plaintiff argues that the ALJ erred at step five in finding that, based on Plaintiff's RFC, Plaintiff could perform work existing in the national economy. Specifically, Plaintiff argues

---

[14] In any event, where, as here, the ALJ's RFC determination is supported by substantial evidence, and is "accompanied by a clear and satisfactory explication of the basis on which it rests," *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001), the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96-8p. *See, e.g.*, *Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do."); *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96-8p, where the ALJ questioned the claimant about the physical limitations of her prior work, and substantial evidence supported the ALJ's findings); *see also Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153, No. 00-1995, slip op. at 4 (3d Cir. Dec. 19, 2000) ("Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing.").

that the ALJ erred: (1) in formulating the hypothetical posed to the VE; and (2) in finding that, based on Plaintiff's RFC, Plaintiff could perform work existing in the national economy.

At step five, the ALJ relied on the VE's testimony, in response to the ALJ's hypotheticals, that someone with Plaintiff's impairments could work as an information clerk, as outlined in DOT 237.367.018. Specifically, the ALJ asked the VE to provide examples of jobs similar to Plaintiff's part-time work, except limited to sedentary, unskilled positions. A.R. 68-70. Plaintiff argues that the ALJ erred in failing to include in his hypothetical to the VE Plaintiff's bilateral hand limitations, including her "difficulty with handling and fingering, as well as the weakness in her . . . hands limiting her ability to lift even ten pounds." Pl.'s Br. at 23.

Plaintiff is correct that, under the law of the Third Circuit, if an ALJ poses a hypothetical question to a vocational expert that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion generally cannot be considered substantial evidence. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) ([A]n ALJ's hypothetical must include all of a claimant's impairments."); *Izzo*, 186 F. App'x at 287 ("The ALJ's hypothetical questions to a vocational expert must reflect all of a claimant's impairments supported by the record or the vocational expert testimony cannot be considered substantial evidence."). However, where an ALJ does not include an alleged impairment or limitation in his or her RFC determination, the ALJ need not pose that alleged impairment or limitation to the vocational expert. *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's] RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo*, 186 F. App'x at 287 (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited

those alleged impairments, excluding them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13-06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").

Here, as already discussed, the ALJ properly considered Plaintiff's exertional and non-exertional limitations and subjective complaints of pain in rendering his RFC findings. Specifically, the ALJ concluded that Plaintiff's subjective complaints, including her testimony as to the severity of her hand limitations prior to reaching the age of twenty-two, were not entirely credible in light of the medical evidence in the record, the gap in Plaintiff's medical records, and Plaintiff's testimony as to her ability to perform her prior part-time work on a full-time basis. A.R. 29-31. Because the ALJ did not specifically include Plaintiff's bilateral hand limitations in his RFC determination, the Court finds that the ALJ did not need to reference Plaintiff's hand limitations in posing the hypothetical to the VE. *See Schmits*, 386 F. App'x at 76 ("But as we discussed previously, the ALJ did not err in discrediting [the claimant's] claim that he suffered from agoraphobia, so that limitation did not need to be included in the hypothetical question to the VE.").[15] Accordingly, because the description of Plaintiff's exertional and non-exertional limitations provided by the ALJ to the VE accurately reflected Plaintiff's limitations, the ALJ did not err in considering the VE's testimony as substantial evidence.

---

[15] Furthermore, even assuming that the ALJ should have referenced Plaintiff's alleged hand limitations in posing the hypothetical to the VE, his failure to do so amounts to harmless error, because the ALJ asked the VE to identify a job similar to Plaintiff's prior work, and Plaintiff testified that she could have performed her prior part-time work on a full-time basis, despite her alleged hand limitations. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 815 (3d Cir. 2016) (rejecting the claimant's argument that the ALJ erred by failing to include a specific limitation in his hypothetical to the vocational expert, because any such error "was harmless."). Accordingly, the ALJ's hypothetical to the VE was broad enough to encompass Plaintiff's alleged hand limitations.

Plaintiff also argues that the ALJ committed reversible error in finding that Plaintiff could perform the job of an information clerk, because that position falls outside of the parameters of Plaintiff's RFC. At the Hearing, the ALJ asked the VE to identify positions within the DOT that paralleled Plaintiff's prior work, but were "sedentary office helper jobs or similar types of jobs," requiring unskilled work. A.R. 70-71. The VE testified that the "only [job] I could think of is something like a receptionist or an information clerk where you essentially sit there." A.R. 71. The VE further testified that the job of an information clerk is a sedentary position with a Specific Vocational Preparation ("SVP") of 2, and that 937,800 of those positions exist in the national economy. A.R. 71. In his decision, the ALJ found that, pursuant to Social Security Regulation 00-4p, the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." A.R. 32. Accordingly, the ALJ concluded:

> The Administrative Law Judge finds that the job of information clerk exists in the national economy in sufficient numbers for an individual with the claimant's age, education, work experience, and residual functional capacity prior to attaining age 22. The Administrative Law Judge further finds that given the claimant's residual functional capacity, she could have performed this job prior to her attainment of age 22.

A.R. 32.

Plaintiff argues that the ALJ erred in adopting the VE's testimony and finding that Plaintiff could perform the information clerk job, because the information clerk position requires a General Educational Development ("GED") reasoning level of four and is a light exertional position, and thus, lies outside the Plaintiff's RFC, which limits Plaintiff to performing sedentary, unskilled work, "including the ability to understand, remember, and carry out simple instructions." A.R. 26. Distilled to its essence, Plaintiff's position is that it was improper for the ALJ to rely on the VE's testimony that Plaintiff could perform the job of an information clerk, because the VE's testimony

as to the requirements of that position were inconsistent with the information contained in the DOT.

> Under Social Security Regulation 00-4p,
>
> [B]efore relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p. In other words, Social Security Regulation 00-4p places "an affirmative duty on the part of an ALJ to inquire about conflicts between vocational expert testimony and the DOT." *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005). Nonetheless, the Third Circuit has held that inconsistencies between the testimony of a vocational expert and the information contained in the DOT "need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* at 557; *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) ("[T]his Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'") (citation omitted). For example, in *Rutherford*, the Third Circuit held that, even though the vocational expert identified jobs "with specified vocational preparation classifications that render them beyond the ALJ's limitation to unskilled work, [those inconsistencies were] simply not egregious enough—either in number or in substance—to bring into question the ALJ's reliance on the expert testimony as a whole," because the vocational expert's testimony that the claimant could perform the jobs identified was supported by substantial evidence in the record. *Id.* at 558.

Furthermore, in *Zirnsak*, a case with facts closely analogous to those in the case at bar, the Third Circuit held that remand was not required, despite the existence of several inconsistencies between the vocational expert's testimony and the information in the DOT as to the occupational requirements of certain positions identified by the vocational expert. 777 F.3d at 617-20. In *Zirnsak*, the administrative law judge found that the claimant was "limited to simple and repetitive tasks involving routine work processes and settings" at the sedentary exertional level. *Id.* at 617. In finding that the claimant was capable of performing work existing in the national economy, the ALJ relied on the vocational expert's testimony that, in light of the claimant's RFC, the claimant was capable of working in three separate clerk positions, or as a sedentary subassembler with a sit/stand option. *Id.* On appeal, the claimant argued that the vocational expert's testimony conflicted with the information in the DOT, because: (1) the clerk positions each had a GED reasoning level of three, which exceeded the ALJ's finding that the claimant was limited to simple and repetitive tasks; and (2) the DOT assigned the subassembler position a physical exertion level of "light," exceeding the claimant's limitation to sedentary work. *Id.*

Despite the inconsistencies between the vocational expert's testimony and the information in the DOT, the *Zirnsak* affirmed the administrative law judge's finding that the claimant could perform work existing in the national economy. *Id.* Specifically, with respect to the conflict between the reasoning level required by the clerk positions and the claimant's limitation to simple and routine work, the Court noted, at the outset, that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Id.* at 618. And, although the administrative law judge in that case did not question the vocational expert regarding the reasoning level inconsistencies, the Third Circuit found that substantial evidence in the record supported the

finding that the claimant could perform the clerk positions. *Id.* at 618-19. In particular, the court noted that the claimant had completed tenth grade, had testified that she received her GED or further education, and "also had previous experience working as both a clerk and a bookkeeper." *Id.* at 619. Accordingly, the court found that the existence of the "minor conflicts" identified by the claimant did "not warrant remand of the ALJ's decision." *Id.* at 620.

Similarly, here, the Court finds that any minor inconsistencies between the VE's testimony and the information contained in the DOT does not warrant remand, because substantial evidence exists in the record to support the ALJ's finding that Plaintiff could perform the information clerk position. At the Hearing, because Plaintiff had testified that she could have performed her prior part-time jobs on a full-time basis, the ALJ asked the VE to identify positions within the DOT that paralleled Plaintiff's prior work, including "clerical jobs," "office helper jobs," or "similar types of jobs" that required unskilled work, but could be performed at the "sedentary" level. A.R. 70-71. Although the VE responded that the information clerk job was at the sedentary level, "where you essentially just sit there," A.R. 71, the DOT classifies the job of information clerk at the light exertional level, requiring a reasoning level of four. Nonetheless, because the VE's testimony and the record in this case provide substantial evidence for the ALJ's conclusion that Plaintiff could perform the information clerk position, the Court finds that any minor inconsistencies between the VE's testimony and the DOT information are not "not egregious enough . . . to bring into question the ALJ's reliance on the expert testimony as a whole." *Rutherford*, 399 F.3d at 558. Specifically, Plaintiff testified that she could perform her prior work – which was similar to that of an information clerk, but with an even higher physical exertional level - on a full-time basis. The record also establishes that Plaintiff is a high school graduate who holds an Associate's Degree. Additionally, when asked to identify positions similar to Plaintiff's prior part-time work, the VE

specifically testified to her belief that the position of information clerk was at the sedentary level,[16] involving mostly sitting.

Moreover, even assuming Plaintiff could not perform the job of an information clerk, the ALJ still properly decided that Plaintiff could perform other work existing in significant numbers in the national economy, in light of his determination that, under Rule 2.01 of the Medical-Vocational Guidelines, Plaintiff could perform other sedentary work existing in the national economy prior to attaining age twenty-two. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2., 201.00; *see also* 20 C.F.R. § 404.1569. The Third Circuit has explained the Grids as follows:

> The tables themselves are relatively straightforward in nature. In brief, they contain all possible combinations of the four relevant vocational factors-age, education, work experience, and residual functional capacity. With respect to each combination, the guidelines reveal whether an individual described by those particular characteristics is "disabled" or "not disabled"-that is, able or not able to engage in any other significant, gainful employment that exists in the national economy. In determining whether a claimant is eligible for disability benefits, therefore, an ALJ simply plots the applicant's "vocational profile" on an appropriate grid and arrives at the result indicated by the regulations for that specific combination of traits. For example, a person "closely approaching advanced age," with a "limited" educational background, no previous work experience, and the ability to perform light work would be classified as "not disabled" under the regulations. Id. at Appendix 2, Rule 202.10. By contrast, an individual of identical age, work experience, and residual functional capacity, who is "illiterate or unable to communicate in English" would be adjudged "disabled." *Id.* at Rule 202.09.8 If a claimant's characteristics do not fit neatly into one of the many categories defined by the tables, the ALJ is permitted to arrive at a conclusion as to disability independent of, but consonant with, the regulations. If, however, an individual's medical-vocational status in fact is described by the grid, the regulations require that a particular decision be reached. *Id.* at s 404.1569 & Appendix 2.

---

[16] The Court notes that in the DOT, there are two separate positions titled information clerk: (1) Information Clerk, DOT 237.367.018 (motor trans.; r.r. trans.; water trans.), which involves light work; and (2) Information Clerk, DOT 237.367.022 (clerical), which involves sedentary work. While the VE cited to the first such position, in light of the fact that she was specifically asked by the ALJ to identify "clerical" positions existing at the sedentary level, A.R. 68-71, it is plausible that the VE in fact meant to cite the second such position, rendering any alleged exertional inconsistency between the VE's testimony and the information in the DOT moot.

*Santise v. Schweiker*, 676 F.2d 925, 927–28 (3d Cir. 1982).[17]

The applicable Grid Rule in this case is Rule 201.00, which corresponds to sedentary work. Specifically, as the ALJ observed, Rule 201.00 indicates that "[a]pproximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy." 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00; *see Santise*, 676 F.2d at 928 ("For example, the Department has concluded that approximately 200 unskilled sedentary positions are available throughout the country, with each position representing 'numerous jobs.'"). The Rule further states that "[v]ocational adjustment to sedentary work may be expected where the individual has special skills or experience relevant to sedentary work or where age and basic educational competencies provide sufficient occupational mobility to adapt to the major segment of unskilled sedentary work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(c).

Here, the ALJ correctly utilized the Grid to find that, given Plaintiff's age, education, work experience, and RFC, prior to attaining the age twenty-two, Plaintiff was capable of making a vocational adjustment to other sedentary work existing in the national economy, as outlined in Rule 201.00. Specifically, the ALJ identified Plaintiff as a "younger individual" eighteen to forty-four, who is a "high school graduate or more," with "unskilled or no" prior work experience, and a sedentary RFC. As the ALJ correctly found, an individual with those characteristics is deemed

---

[17] The Court notes that the regulations "preclude application of the Grid in cases where a non-exertional limitation would significantly limit [the claimant's] ability to perform at a designated exertional level." *Ross v. Astrue*, No. 08-4980, 2009 WL 4250060, at *11 (D.N.J. Nov. 24, 2009); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(2). However, in this case, because the ALJ did not find that Plaintiff suffered from a severe mental impairment, and Plaintiff does not argue that she had a severe mental impairment or other non-exertional limitation that would significantly limit her ability to perform work at the sedentary level, the ALJ's reliance on the Grids was proper. *See Ross*, 2009 WL 4250060 at *11 (finding that the ALJ's reliance on the Grids was proper, where the ALJ had found that Plaintiff did not suffer from a significant non-exertional limitation).

"not disabled" under Grid Rule 201.27. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.27. Accordingly, the ALJ's reference to the Medical-Vocational Guidelines supports his conclusion that Plaintiff could perform work existing in significant numbers in the national economy.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed. An appropriate Order shall follow.


Dated:  November 30, 2017                                 /s/ Freda L. Wolfson
                                                         Hon. Freda L. Wolfson
                                                         United States District Judge